IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMARR KELLAM, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 2:10-cv-01644-JCJ |
| v. | : | |
| | : | |
| INDEPENDENCE CHARTER SCHOOL, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT INDEPENDENCE CHARTER SCHOOL'S BRIEF IN SUPPORT OF
<u>ITS MOTION FOR SUMMARY JUDGMENT</u>**

**I.      INTRODUCTION**

Defendant, Independence Charter School ("ICS"), hereby moves for summary judgment pursuant to Fed.R.Civ.P 56 on the grounds that Plaintiff Jamarr Kellam ("Kellam") cannot state a *prima facie* case of disparate impact discrimination sufficient to proceed to trial.  ICS, a Kindergarten through 8th grade charter school in Philadelphia, terminated Plaintiff's employment in 2004 because of Plaintiff's prior criminal conviction for felony aggravated assault.  The Commonwealth of Pennsylvania mandated that ICS terminate Plaintiff's employment, prohibiting schools from employing individuals with enumerated criminal convictions within five years of employment.  Plaintiff's conviction of felony aggravated assault was among the prohibited offenses.  Accordingly, ICS had no choice but to terminate Plaintiff's employment pursuant to state law or else face statutory penalties.  Plaintiff now contends that ICS took an unlawful course of action when it followed Pennsylvania law, because Pennsylvania's statute prohibiting employment of certain convicted felons in public and private schools allegedly has a disparate impact on black males.

Plaintiff's claim fails for two reasons: (1) ICS was merely complying with Pennsylvania law; it had no separately created policy regarding employment of convicted felons; and (2)

Plaintiff cannot demonstrate that the specific Pennsylvania statute at issue had a disparate impact on black male employees of ICS.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

ICS relies on its accompanying Statement of Undisputed Material Facts in support of this Brief.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof." *Brenner v. Harleysville Insurance Cos.*, 2002 U.S. Dist. Lexis 18494 (E.D. Pa. 2002) (citing, *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990).

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

IV.     **LEGAL ARGUMENT**

    A.     **Plaintiff Cannot Establish A Prima Facie Case Of Disparate Impact Discrimination**

Plaintiff's lawsuit is based solely on the disparate impact theory of discrimination.[1] Under a disparate impact theory, a plaintiff must demonstrate that an employment practice that is facially neutral in its treatment of different groups nonetheless falls more harshly on one group than another and cannot be justified by business necessity. *See, Raytheon Co. v. Hernandez,* 540 U.S. 44, 52 (2003). Thus, in a disparate impact context, "a facially neutral employment practice may be deemed [illegally discriminatory] without evidence of the employer's subjective intent to discriminate that is required in a 'disparate-treatment' case." *Id.* (internal citations omitted).

To prevail, Plaintiff must prove that the challenged policy discriminates against members of a protected class. *See, El v. SEPTA*, 479 F.3d 232, 239 (3d Cir. 2007). Pursuant to the express language of the statute, the <u>plaintiff</u> bears the initial burden of proof of establishing an unlawful employment practice by demonstrating "that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin …" 42 U.S.C. § 2000e-2(k). A *prima facie* case must be established by demonstrating that the defendant's policy or practice caused a "significantly discriminatory hiring <u>pattern</u>." *EEOC v. Schott*, 2008 U.S. Dist. LEXIS 75225 at 35 (emphasis added) (citing, *Newark Branch, NAACP v. City of Bayonne*, 134 F.3d 113, 121 (3d Cir. 1998); *Newark Branch, NAACP v. Town of Harrison*, 940 F.2d 792, 798 (3d Cir. 1991)).

Plaintiff's claim fails because he cannot demonstrate a *prima facie* case of disparate impact discrimination. Plaintiff cannot do so for two key reasons: (1) ICS was merely complying with state law; it had no separately created policy prohibiting the employment of

---

[1] Notably, Plaintiff brings this disparate impact lawsuit on his own behalf, as a single plaintiff.

convicted felons; and (2) he cannot demonstrate that the state law as followed by ICS caused a significant adverse impact on black male employees of ICS.

        **1.**      **Plaintiff Cannot Identify Any Independent ICS Policy That Caused An Alleged Disparate Impact; Rather He Can Only Identify A Pennsylvania Statute**

In order to set forth a prima facie case of disparate impact, Plaintiff must identify an ICS policy that allegedly causes a disparate impact on a protected class. Plaintiff's claim fails because his simply cannot do so. Rather, Plaintiff can only point to Pennsylvania law, with which ICS has no choice but to comply or else face revocation of its charter license.

        **a)**      **Pennsylvania's statute prohibiting employment of certain individuals with prior criminal convictions**

ICS is a Pennsylvania charter school serving elementary school children in grades Kindergarten through 8th. *See,* Independence Charter School Employee Handbook, Approved October, 2004, at page 3, *Introduction*, excerpts of which are attached hereto as Exhibit "A." It employs teachers and administrative staff in a variety of jobs, including Non-Teaching Assistants and lunchroom staff. *See*, Exhibit "A," at page 10, *Employment Policies*. All ICS employees, including Non-Teaching Assistants (NTAs), are in contact with the children at ICS, with varying levels of supervision.

As a Pennsylvania charter school, ICS is required to comply with all applicable state laws and regulations, as well as any applicable regulations from the Department of Education. *See*, 24 P.S. § 17-1701, *et seq*. Failure to do so jeopardizes ICS's charter and would lead to the state shutting down ICS. *See*, 24 P.S. § 17-1729-A. In accordance with the law, ICS students must be supervised at all times, must be observed by school employees for signs of physical abuse, including irregular behavior indicative of other forms of abuse, and must be protected from unauthorized adults. *See*, Exhibit "A," at page 25, *Interacting with Students*. Teachers and administrative staff are expected to implement "behavioral support," understanding when and

4

how to employ "positive techniques for the modification of disruptive behavior" in the least intrusive manner.  *See*, Exhibit "A," at page 26, *Behavior Support*.  ICS is highly accountable to parents, who are given a formal process for addressing <u>any</u> concerns about the academic, social or other services provided by the school.  *See*, Exhibit "A," at page 25, 26, *Interacting with Parents*.

Among the many laws applicable to charter schools, Pennsylvania law requires criminal background checks of all prospective employees of public, nonpublic and private schools in the Commonwealth.  *See,* 24 P.S. § 1-111.  Pursuant to the law:

> (e) No person subject to this act shall be employed in a public or private school, intermediate unit or area vocational-technical school where the report of criminal history record information indicates the applicant has been convicted, within five (5) years immediately preceding the date of the report, of any of the following offenses:
>
> (1) An offense under one or more of the following provisions of Title 18 of the Pennsylvania Consolidated Statutes:
>
> Chapter 25 (relating to criminal homicide).
> *Section 2702 (relating to aggravated assault).*
> Former section 2709(b) (relating to stalking).
> Section 2709.1 (relating to stalking).
> Section 2901 (relating to kidnapping).
> Section 2902 (relating to unlawful restraint).
> Section 3121 (relating to rape).
> Section 3122.1 (relating to statutory sexual assault).
> Section 3123 (relating to involuntary deviate sexual intercourse).
> Section 3124.1 (relating to sexual assault).
> Section 3125 (relating to aggravated indecent assault).
> Section 3126 (relating to indecent assault).
> Section 3127 (relating to indecent exposure).
> Section 4302 (relating to incest).
> Section 4303 (relating to concealing death of child).
> Section 4304 (relating to endangering welfare of children).
> Section 4305 (relating to dealing in infant children).
> A felony offense under section 5902(b) (relating to prostitution and related offenses).
> Section 5903(c) or (d) (relating to obscene and other sexual materials and performances).

>> Section 6301 (relating to corruption of minors).
>> Section 6312 (relating to sexual abuse of children).
>
> (2) An offense designated as a felony under the act of April 14, 1972 (P.L. 233, No. 64), known as "The Controlled Substance, Drug, Device and Cosmetic Act."
>
> (3) An out-of-State or Federal offense similar in nature to those crimes listed in clauses (1) and (2).

24 P.S. § 1-111(e)(emphasis added). Schools that willfully fail to comply with the requirements of the statute are considered in violation of the law and are subject to civil penalties. *See,* 24 P.S. § 1-111(g). The law, as written, does not allow schools to exercise any discretion in this arena. (Krokys Tx., pg. 96:5-14.)

### b) Plaintiff's prior conviction for felony aggravated assault rendered him ineligible for employment with ICS pursuant to state law

Unfortunately for Plaintiff, his criminal conviction made him ineligible for employment with ICS pursuant to Pennsylvania law. In 2001, Plaintiff was convicted of felony aggravated assault, felony attempted robbery, misdemeanor trespass, and misdemeanor resisting arrest. (Kellam Tx., pg. 19:1-24, 20:1-24, 21:1-5, 87:8-18, 88:2-16.) Plaintiff's 2001 conviction for felony aggravated assault was on the list of enumerated offenses prohibiting employment within 5 years of conviction. *See,* 24 P.S. § 1-111(e). Thus, by virtue of Pennsylvania law, Plaintiff was ineligible for employment with ICS. Pennsylvania law did not allow ICS to exercise discretion in the matter. Krokys testified: "I could not take any other factors into account simply because this was a very clear directive,… These are requirements from the State. I can never interpret this kind of requirement. It's not up to me." (Krokys Tx., pg. 96:5-14.)

On November 2, 2004, ICS CEO Jurate Krokys received a 10-page legal alert via "Penn Link" – a state-sponsored notification system which sends e-mail alerts of important events to all public school administrators. (Krokys Tx., pg. 81:6-24, 82:1-24, 83:1-24, 84:1-9.) The

November notice set-forth the language of 24 P.S. § 1-111, prohibiting the employment of persons recently convicted (within five years) of specified criminal offenses from working in schools. (Krokys Tx., pg. 84:5-6, 91:6-9, and Exhibit "Krokys-7" to Oral Deposition of Jurate Krokys.) Ms. Krokys reviewed the list and, "to [her] alarm it indicated potentially that Jamarr would be included in that list." (Krokys Tx., pg. 82:2-7.) Per the November 2, 2004 notice, Ms. Krokys was also made aware that the State would immediately and <u>strictly</u> enforce the law. (Krokys Tx., pg. 96:5-14.). Ms. Krokys herself testified:

> "And so when this came out I read this, I looked at it and with my nonlegal brain, I then took it to the people on the Board who have been working as lawyers, for them to help me understand this, to see whether or not this was something that we had to respond to. Specifically in the case of Jamarr.
>
> And they said that indeed this specifically –
>
> We looked specifically at his criminal record as it was published by the State or whoever. And said that, in fact, it is there. Right? The aggravated assault is there.
>
> So it's listed. And so I asked multiple questions to see if there was any other interpretation. And there was not.
>
> And so working together we found that this was, in fact, something we were responsible for, and that the State was indicating that Jamarr could not be an employee."

(Krokys Tx., pg. 87:21-88:20.)

Thus, on November 16, 2004, Ms. Krokys informed Plaintiff that his employment was terminated pursuant to Pennsylvania law forbidding his employment. (Kellam Tx., pg. 95.) Plaintiff admitted that Ms. Krokys told him that she received an email from the state Department of Education stating that she could no longer employ him as the State was strictly enforcing the law. (Kellam Tx., pg. 99-100, 102:17-24, 108:4-13, and Exhibit "K-5" to Oral Deposition of Jamarr Kellam.)

Thus, as set forth above, Plaintiff's employment was terminated solely due to the application of State law. The law required his termination and ICS had no choice but to obey state law. ICS had no separate policy prohibiting the employment of convicted felons and indeed, Plaintiff has no evidence to the contrary. (Campbell Tx., pg. 45:15-24, 46:1-24, 47:1-4.) In fact, Plaintiff acknowledged this very fact during his own deposition when he admitted that he was aware of no formal ICS policy precluding the employment of persons with criminal convictions. (Kellam Tx., pg. 153:16-24, 154:1-24, 155:1-12.) Plaintiff also admitted that Ms. Krokys provided him with a copy of the law at the time of his termination, stating "this is why" he could not continue to work at ICS. (Kellam Tx., pg. 99:3-24, 100:1-24, 102:17-24, 108:4-13, and Exhibit "K-5" to Oral Deposition of Jamarr Kellam.) Plaintiff has absolutely no evidence of any independent ICS policy, other than Pennsylvania law, requiring his employment termination. Since Plaintiff can only identify a State law, and not any ICS policy, that arguably has a disparate impact, he cannot set forth a *prima facie* case of disparate impact against ICS.[2]

### 2. Plaintiff Cannot Demonstrate That Pennsylvania Law Caused A Significant Adverse Impact On Black Male Employees Of ICS

In addition to Plaintiff's failure to identify any ICS policy, Plaintiff's claim fails because he cannot demonstrate that Pennsylvania law caused a significant adverse impact on black male employees at ICS. "[A] Title VII plaintiff does not make out a case of disparate impact simply by showing that, 'at the bottom line,' there is a racial *imbalance* in the workforce. As a general matter, a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack. Such a showing is an integral part of the plaintiff's prima facie case in a disparate-impact suit under Title VII." *See,*

---

[2]   Curiously, Plaintiff has not chosen to challenge the legality of 24 P.S. § 1-111 by bringing a lawsuit against the Commonwealth of Pennsylvania. Perhaps that would have been a wiser course of action.

*Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989), superseded on other grounds. Thus, in order to demonstrate a *prima facie* case of disparate impact discrimination, Plaintiff bears the burden of proving that the policy complained of has a significantly disproportionate exclusionary impact on his protected class. Plaintiff fails to meet his burden for two reasons: (1) he has no statistical evidence, and more importantly, cannot identify a single ICS employee other than himself affected by the application of Pennsylvania law; and (2) he cannot demonstrate a causal link between the specific Pennsylvania statute and any alleged disparities.

        a)        **Plaintiff offers no statistical proof of an alleged disparate impact**

Plaintiff has proffered no statistical evidence demonstrating an actual disparate impact on ICS employees as a result of the application of Pennsylvania law, and indeed, has not identified any expert to provide such evidence at the time of trial.[3] Plaintiff's attempt to rely on generic data regarding incarceration rates in the U.S. as a whole, is inapposite. To prove causation through statistical evidence, "the statistics must be 'of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.'" *Newark Branch, NAACP v. City of Bayonne*, 134 F.3d 113, 121 (3d Cir. 1998) (*internal citations omitted*). Federal Government incarceration figures cannot supplant the need for specific statistical evidence concerning the impact of the policy or practice in question. *See, McNeil v. McDonough*, 648 F.2d 178, 182 (3d Cir. 1981) (causation will be proven only if the statistics do not require speculation by the court). This lack of evidence is fatal to Plaintiff's claim. *See, Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 383, n.6 (5th Cir 2007) (upholding summary judgment for the employer where the plaintiff did not furnish evidence of observed statistical disparities caused by the employer); *see also, EEOC*

---

[3]    The deadline to identify experts in this matter was on March 18, 2011 and Plaintiff failed to identify any experts by that date.

*v. Greyhound Lines, Inc.*, 635 F.2d 188 (3d Cir. 1980) (rejecting a disparate impact claim because there was insufficient evidence that an employer's policy excluded more blacks than whites from a job).

Moreover, Plaintiff's inability to identify a single ICS employee affected by the alleged policy – other than himself – similarly is fatal to his case. *See, Gregory v. State of Illinois*, 1989 U.S. Dist. LEXIS 10563, * 8-9, No. 87 C 10704 (N.D. Ill. Sept. 6, 1989) (holding that plaintiff failed to set forth a *prima facie* case of disparate impact discrimination where plaintiff could only identify three employees who may have been affected by the policy in question, stating "[t]his is not a large enough sample to allow a reasonable jury to infer that the … policy was having a disparate impact on pregnant employees. Thus [plaintiff's] disparate impact claim must fail."); *see also, Wright v. National Archives and Records Service*, 609 F.2d 702, 712 n. 10 (4th Cir. 1979) (plaintiff cannot establish a *prima facie* case where "the challenged employment practice consists of so limited a number of discreet episodes, the set within which disparateness of impact is to be found is so small in total number, and where only one of that set is claimed to have experienced a legally cognizable adverse impact."); *Pinckney v. County of Northampton*, 512 F. Supp. 989, 996 (E.D. Pa. 1981). In fact, Plaintiff even admitted that no other employees were terminated by ICS as a result of a prior criminal conviction.[4] (Kellam Tx., pg. 149:18-24, 150:1-24, 151:1-5, 155:15-19.).

> Q: Are you aware of anybody else who was affected by this policy?
>
> A: No. No. Because nobody else was terminated because of their background besides me.

---

[4] Although Plaintiff alleges in his Complaint that two other individuals were denied employment on the basis of their criminal records, during his deposition he admitted that one of the individuals did not have any criminal record, and he did not know why her employment was terminated. He was unable to identify the second, nameless, employee. (Kellam Tx., pg. 174:8-14, 177:11-14.)

(Kellam Tx., pg. 155:15-19.) Michelle Campbell, a former member of the ICS Board of Trustees who is familiar with the school's hiring practices, confirmed that Plaintiff is the only employee whose criminal record ever became an issue in the decision to terminate. (Campbell Tx., pg. 45:15-24, 46:1-24, 47:1-20.). In order to survive summary judgment, Plaintiff must provide more than just his own belief of a disparate impact; he must provide actual evidence of a disparate impact. Plaintiff fails to do so.

        **b)    Plaintiff cannot demonstrate a link between application of Pennsylvania law and an alleged disparate impact.**

Assuming that Plaintiff can demonstrate a disparate impact, he must prove a causal link between the specific employment practice at issue and the disparities observed. *See, Wards Cove Packing Co.*, 490 U.S. 642, 657 ("[Plaintiffs] will also have to demonstrate that the disparity they complain of is the result of one or more of the employment practices that they are attacking here, specifically showing that each challenged practice has a significantly disparate impact on employment opportunities for whites and nonwhites."); *see also, Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 383, n.6 (5th Cir. 2007) ("Statistical disparities between the relevant groups are not sufficient. A plaintiff must offer evidence 'isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'"). Plaintiff fails to demonstrate such a causal link and as such, he cannot demonstrate a prima facie case of disparate impact discrimination.

    **B.    ICS's Adherence to Pennsylvania Law Regarding Employment Of Individuals With Specific Criminal Convictions Is Consistent With Business Necessity**

Even assuming Plaintiff can state a *prima facie* case of disparate impact sufficient to survive summary judgment, his claim nonetheless fails because ICS's adherence with Pennsylvania law regarding employment of individuals with specific criminal convictions is consistent with business necessity. Only once the plaintiff establishes a prima facie case of

11

disparate impact does the burden shift to the defendant employer to show that the employment practice in question is "job related for the position in question and consistent with business necessity … ." 42 U.S.C. § 2000e-2(k).

In this case, ICS itself did not have a policy or practice separate and apart from following Pennsylvania law. Presumably, Pennsylvania passed the applicable statute regarding employment of convicted felons after careful study in order to protect the State's children. Laws enacted by the state legislatures are presumptively constitutional. *See*, *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 153, 64 S. Ct. 474, 88 L. Ed. 635 (1944) ("State statutes, like federal ones, are entitled to the presumption of constitutionality until their invalidity is judicially declared."); *Kober v. Westinghouse Elec. Corp.*, 480 F.2d 240, 248 (3rd Cir. 1973). ICS can only presume that the State balanced the sensitive nature of school jobs that involved working with young children against employment of those with criminal convictions when it selected the offenses that would bar such employment and selected the 5 year time frame specified in the statute. *See, El v. SEPTA*, 479 F.3d 232, 245 (3d Cir. 2007).

Here, Pennsylvania law does not allow for any discretion by employers and instead required ICS to terminate Plaintiff's employment. *See,* 24 P.S. § 1-111(e). As Ms. Krokys herself testified "I could not take any other factors into account simply because this was a very clear directive, ... These are requirements from the State. I can never interpret this kind of requirement. It's not up to me." (Krokys Tx., pg. 96:5-14.) Had ICS done so, it would have been in violation of Pennsylvania law and subject to civil penalties and would have risked losing its charter license. *See,* 24 P.S. § 1-111(g). A charter school which violates any provision of the Charter School Law, or "any provision of law from which the charter school has not been exempted," is subject to having its charter revoked, not renewed, forfeited, or surrendered, such that the school will cease to operate and must be dissolved. *See*, 24 P.S. § 17-1729-A.

12

As previously stated, the facts are clear.  Pennsylvania law prohibits the employment of individuals with criminal convictions for aggravated assault within 5 years of employment in public and/or private schools.  Plaintiff was convicted of aggravated assault in 2001, within 5 years of his employment at ICS.[5]  ICS's Board confirmed that the timing of Plaintiff's conviction and the offense for which he was convicted placed him squarely in the purview of the statute. (Krokys Tx., pg. 83:3-11.)  As his job essentially entailed working with young children, Plaintiff was necessarily in constant contact with minors.  Although Plaintiff may have been a satisfactory employee, his criminal record rendered him unemployable at ICS during that time.[6]  ICS had no option but to terminate Plaintiff's employment in light of valid, clearly applicable, Pennsylvania law.

To the extent that Plaintiff believes that the statute, as written, unfairly includes convictions for aggravated assault, he should have brought suit against the Commonwealth, not ICS.  Holding ICS liable for an alleged disparate impact caused by compliance with Pennsylvania law, and not by any decision made by ICS, places ICS in a "Catch-22" situation.  First, it would require ICS (and every public and private school in Pennsylvania) to determine whether every state law that it is required to follow could disparately impact a protected group. Second, should Pennsylvania law cause a disparate impact, accepting Plaintiff's position would force ICS (and every other school) to make a choice between following State law and risk liability under Title VII, or blatantly defy State law and risk losing its license to operate as a school.  Neither Title VII, nor the EEOC requires ICS to ignore applicable State law on the basis that it might cause a disparate impact on a protected group.  Accordingly, this Court should not do so.

---

[5]     Notably, Kellam later re-offended in 2006, after his employment termination and was again incarcerated.  (Kellam Tx., pg. 12:5-24, 29:12-23.)

[6]     Ms. Krokys testified: ". . . it was a matter of not performance but the time frame of when the conviction happened and what the State would allow." (Krokys Tx., 94:14-17.)

## V. CONCLUSION

For the foregoing reasons, Independence Charter School respectfully requests that this Court grant summary judgment in its favor and dismiss Plaintiff's Complaint in its entirety.

                                                          **Segal McCambridge Singer & Mahoney, Ltd.**

Dated: March 23, 2011              By:    */s Brian W. Franklin*
                                                       Walter H. Swayze, III, Esquire
                                                       PA 59101
                                                     Brian W. Franklin, Esquire
                                                     PA 202523
                                                     1818 Market Street, Suite 2600
                                                     Philadelphia, PA  19103
                                                     Phone:       (215) 972-8015
                                                     Telefacsimile:  (215) 972-8016
                                                     Attorneys for Defendant,
                                                     Independence Charter School