IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMARR KELLAM**, | : |
| | : Civil Action No. 2:10-cv-01644 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| **INDEPENDENCE CHARTER SCHOOL,** | : |
| | : |
| Defendant | : |

## ORDER

**AND NOW,** upon consideration of the Plaintiff Jamarr Kellam's Motion for Summary Judgment, and any response thereto, it is hereby ORDERED that Plaintiff's Motion is GRANTED. The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant.

**By the Court:**

_____
Honorable J. Curtis Joyner

Dated: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMARR KELLAM**, | : |
| | :     Civil Action No. 2:10-cv-01644 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| **INDEPENDENCE CHARTER SCHOOL**, | : |
| | : |
| Defendant | : |

## PLAINTIFF JAMARR KELLAM'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, Plaintiff Jamarr Kellam, by and through his counsel, and for the reasons set forth in the accompanying brief, requests that the Court enter an order granting summary judgment in favor of Plaintiff on all claims in accordance with Rule 56 of the Federal Rules of Civil Procedure.

Respectfully submitted,
THE POST LAW FIRM

*/s/ May Mon Post*
_____
May Mon Post, Esquire
Attorney for Plaintiff
1735 Market Street, Suite A-194
Philadelphia, PA  19103
TEL:  (267) 335-3068
FAX:  (267) 599-9398
mpost@PostLawyer.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMARR KELLAM**, | : |
| | : Civil Action No. 2:10-cv-01644 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| **INDEPENDENCE CHARTER SCHOOL**, | : |
| | : |
| Defendant | : |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF JAMARR KELLAM'S MOTION FOR SUMMARY JUDGMENT</u>**

**I.   INTRODUCTION**

Plaintiff Jamarr Kellam is entitled to summary judgment on his claims because the record shows that Defendant Independence Charter School's ("ICS") blanket policy or practice of excluding individuals from employment on the basis of their conviction records has a disparate impact on Blacks in light of statistics showing that they are convicted at a rate disproportionately greater than their representation in the population. Consequently, Mr. Kellam submits that ICS' policy or practice is unlawful under Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. §§ 2000d and 2000e, the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991), and the Pennsylvania Human

Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* For the reasons that follow, summary judgment in Mr. Kellam's favor is appropriate.

## II.   PROCEDURAL HISTORY

Mr. Kellam initiated this lawsuit on April 14, 2010. Count I of Mr. Kellam's Complaint alleges discrimination/disparate impact based on race, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Count II alleges discrimination/disparate impact based on race, in violation of the Pennsylvania Human Relations Act ("PHRA"). On July 16, 2010, ICS filed a Motion to Dismiss Plaintiff's Complaint. On August 17, 2010, this Court denied Defendant's Motion to Dismiss Plaintiff's Complaint. Defendant filed its Answer to Plaintiff's Complaint on August 27, 2010. On October 9, 2010, Mr. Kellam quoted a demand to Defendant and indicated that he wished to resolve this case amicably; however, Defendant has not given an offer to Mr. Kellam. Fact discovery was completed on March 18, 2010.

## III.   BRIEF STATEMENT OF FACTS

Mr. Kellam incorporates by reference the facts set forth in the accompanying Plaintiff's Statement of Undisputed Material Facts as though the same were set forth at length herein.  Where Defendant made Statement of Facts that Mr. Kellam deems material and false, he provides Counter Statement of Facts below.

**A.     Counter Statement of Facts**

32.     The State clearances take some time to come in, and Plaintiff did not immediately tell Krokys about his criminal record.

It is admitted that the State clearances take some time to come in. However, it is denied that Mr. Kellam did not immediately tell Krokys about his criminal record. By way of further explanation, Mr. Kellam worked at ICS as a volunteer from August 15, 2003 until September 1, 2003, the first day of school. Oral deposition of Jamarr Kellam, filed with this Court as Exhibit B to Defendant's Motion for Summary Judgment ("Kellam Dep."), at 47:21-48:7. Approximately one week before the first day of school, Mr. Kellam submitted a job application for a part-time Lunchroom Assistant position to Principal Jurate Krokys. Kellam Dep. at 48:22-49:2; 92:14-21. The job application, which Mr. Kellam completed, requested his name, Social Security number, education, and a box to check in connection with criminal convictions. Kellam Dep. at 93:18-94:6. Mr. Kellam checked the box where it asked him if he had a criminal conviction and indicated that he wanted to personally speak to Krokys personally about this. Kellam Dep. at 93:1-8. Mr. Kellam testified that he wanted to ensure that ICS would be able to hire him, given his criminal background, before "spending the money [he] did not have" on a criminal background check. Kellam Dep. at 54:3-22; 58:12-22; 164:1-19.

Mr. Kellam was told that he was qualified for the position, and thus, began employment with ICS on September 1, 2003. Kellam Dep. at 54:3-10; 63:2-5.

33. ICS did not have a formal job application for non-teachers; ICS had no form asking whether the applicant had ever been convicted of a crime.

Denied. As stated previously, prior to September 1, 2003, Mr. Kellam completed a job application, which reflected that he had a criminal record. See also, Plaintiff's sworn EEOC Charge of Discrimination, attached hereto as Exhibit 1.

34. <u>After</u> he began working, and while the State clearances were pending, Plaintiff informed Kroskys that he had criminal convictions stemming from a resisting arrest incident with "trumped up charges."

Denied. As stated previously, Mr. Kellam checked the box on the application where it asked him if he had a criminal conviction, and requested to speak to Krokys, before "spending the money [he] did not have" on a criminal background check. Kellam Dep. at 54:3-22; 58:12-22.

42. Pursuant to the law:

    (e)    No person subject to this act shall be employed in a public or private school, … where the report of criminal history record information indicates the applicant has been convicted, within (5) years immediately preceding the date of the report, of any of the following offenses:

        (1)    An offense under one or more the following provisions of Title 18 of the Pennsylvania Consolidated Statutes:

        Section 2701 (relating to aggravated assault)

Denied as stated. This statute applies to "Background Checks of Prospective Employees." See 24 P.S. § 1-111.

62. Krokys testified that several Board members offered to assist Plaintiff in his search for another job.

Denied as stated. Mr. Kellam testified that Michelle Campbell, Esquire, a Board member, spoke with him after he was terminated. Kellam Dep. at 142:12-15. Mr. Kellam further testified that Ms. Campbell told him not to give up and told him to "keep on doing what [he needed] to do to live." Kellam Dep. at 142:16-143:11.

63. Krokys asked Plaintiff to reapply after a year, when eligible, and told him that he would be rehired.

Denied. Krokys never asked Mr. Kellam to reapply after a year. Kellam Dep. at 144:1-20.

77. Although Plaintiff baldly alleges in his Complaint, that two other individuals were denied employment due to having criminal records, he admitted that one of the individuals did not have any criminal record, and the other could not be identified.

Denied. Mr. Kellam never asserted that two other individuals were denied employment due to having criminal records. Rather, he asserted that Defendant terminated Plaintiff and the two individuals (black) that Plaintiff recommended for employment with the Defendant. Plaintiff's Complaint, filed with this Court as Docket No. 1, at ¶ 25.

## IV.  ARGUMENT

### A.  Legal Standard.

Summary judgment is intended to avoid a useless trial.  R.W. Sims v. Mack Truck Corp., 488 F. Supp. 592, 597 (E.D. Pa. 1980).  Accordingly, summary judgment is proper in a case where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Scott v. Harris, 550 U.S. 372, 380 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Salley v. Circuit City Stores, 160 F.3d 977, 980 (3d Cir. 1998).  A plaintiff moving for summary judgment satisfies its burden by submitting summary-judgment proof that establishes all elements of its claim as a matter of law.  San Pedro v. United States, 79 F.3d 1065, 1068 (11th Cir. 1996).  Plaintiff must show that no reasonable trier of fact could find other than for plaintiff.  Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986).  While genuine disputes of material fact must be resolved in favor of the party opposing the motion, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  A disputed fact is not "material" unless its resolution could affect the outcome of the case, and a disputed fact is not "genuine" unless the evidence bearing on the disputed fact is such that a reasonable person could find for the non-moving party.  Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155 (3d Cir. 1990).

### B. Mr. Kellam is Entitled to Summary Judgment on His Discrimination Claims Because Defendant Failed to Consider an Alternative Practice With Less of a Discriminatory Effect.

Under the disparate-impact theory, "a facially neutral employment may be deemed violative of Title VII without evidence of the employers' subjective intent to discriminate that is required in a 'disparate-treatment' case." <u>Wards Cove Packing Co. v. Antonio</u>, 490 U.S. 642, 645-46 (1989), superseded by statute on other grounds, Civil Rights Act of 1991, § 105, 105 Stat 1074-1075, 42 U.S.C. § 2000e-2(k) (1994 ed.). In order to proceed under the disparate-impact theory, a plaintiff can prove that the challenged policy or practice discriminates against members of a protected class. Once a plaintiff meets this burden, a defendant can overcome the showing of disparate impact by showing business necessity. <u>See</u> <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424 (1971). However, the successful assertion of the business necessity defense is not an ironclad shield. A plaintiff can overcome Defendant's business necessity justification by showing that an alternative policy exists that would serve the employer's legitimate goals as well as the challenged policy or practice with less of a discriminatory effect. <u>El v. SEPTA</u>, 479 F.3d 232, 239, fn. 9 (3d Cir. 2007).

Defendant contends that in the fall of 2004, the Commonwealth of Pennsylvania's Department of Education distributed a special notification regarding the requirements for charter school employees working with children. According to the notice, the Commonwealth stated that it would enforce 24 P.S. § 1-111 in charter schools, thus prohibiting them from hiring persons with a

record of certain criminal convictions, including but not limited to aggravated assault. Therefore, Defendant states that under Pennsylvania law, it was required to terminate Mr. Kellam's employment.

In this case, Mr. Kellam can establish that Defendant's practice of blanketly terminating individuals with certain criminal convictions has a disparate impact on Blacks.[1] Statistics show that Blacks are convicted at a rate disproportionately greater than their representation in the population. See Bureau of Justice Statistics, which have been Bates stamped as Kellam 0008-0111, attached hereto as Exhibit 1. Indeed, statistics from the U.S. Department of Justice indicate that black males are incarcerated at a rate that is over 6 times higher than that for white males. That is, for every 100,000 black males, an estimated 4,777 are held in federal or state prison or a local jail. By contrast, for every 100,000 white men, only 727 are estimated to be incarcerated. See Exhibit 1, Table 18.

Defendant contends that 24 P.S. § 1-111 was not its policy but the state law and that its business necessity was complying with the state law. Oral deposition of Jurate Krokys, filed with this Court as Exhibit C to Defendant's Motion for Summary Judgment ("Krokys Dep."), at 96:5-14. As an initial matter, Mr. Kellam does not contest the state law, 24 P.S. § 1-111; further, he is aware

---

[1] Mr. Kellam does not allege that Defendant's blanket practice of excluding individuals from employment on the basis of their conviction records has caused a significant adverse impact on black male employees *at ICS*. Rather, Mr. Kellam submits that Defendant's blanket practice of excluding individuals from employment on the basis of their conviction records has a disparate impact on Black males *in general*, in light of statistics previously discussed.

that Defendant had no separately created policy regarding employment of convicted felons. Mr. Kellam, however, asserts that 24 P.S. § 1-111 applies to ***applicants*** *for employment* with public and private schools, who have ***direct contact with students***. See 24 P.S. § 1-111. Had Mr. Kellam been an applicant for employment with Defendant for a position which necessitated direct contact with students, he would agree with Defendant that the state law mandated that he not be hired for the position based on his criminal conviction. In this case, however, Mr. Kellam was not a prospective employee, or an applicant for employment. Rather, he was a dedicated, positive role model for the children, who had worked for Defendant for one year without any incident. Krokys Dep. at 43:14-45:24. Further, he was a dependable, loyal, and diligent employee, so that he was even promoted to a full-time Noon Time Assistant position during his employment with Defendant. Krokys Dep. at 47:15-48:11; Oral deposition of Michelle Campbell, filed with this Court as Exhibit E to Defendant's Motion for Summary Judgment ("Campbell Dep."), at 87:11-88:21. Because Mr. Kellam was already an employee with Defendant, he submits that Defendant's practice of summarily terminating his employment, without exploring another option short of termination--such as, considering Mr. Kellam for ***another position*** within the school, which did ***not*** require direct contact with students--was necessarily discriminatory. See Krokys Dep. at 98:19-99:8 (stating, erroneously, that it was impossible to consider other positions within the school for Mr. Kellam because

the state law covers "anybody who works anywhere in a school").[2] See 24 P.S. § 1-111. See also, Kellam Dep. at 105:11-107:21 (stating that at the time of his termination, Mr. Kellam asked Krokys about jobs that did not involve working directly with children but that Krokys simply told him that there was nothing she could do for him: "She said that she couldn't do nothing [sic] for me. She didn't even get into the fact about the children and all that type of stuff. All she said is this is what is on your record. Aggravated assault is on your record and we cannot [sic] no longer employ you. And I asked about other types of employment that I may have -- may be able to do and it wasn't granted."). Thus, Mr. Kellam submits that an alternative policy of employing him in a position which did not entail working with children (even if this position was less desirable than the one he was promoted to) existed that would serve the Defendant's legitimate goals as well as the challenged practice with less of a discriminatory effect but that Defendant failed to consider these options or to engage in an interactive process with Mr. Kellam by terminating his employment abruptly.

---

[2] Krokys also testified, erroneously, that the law existing at the time of Mr. Kellam's original hire only prohibited the employment of persons convicted of enumerated offenses within three years. Krokys Dep. at 90:10-91:4.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff, Jamarr Kellam, respectfully asks the Court to grant this motion and render a final summary judgment in his favor.

Respectfully submitted,

THE POST LAW FIRM

  /s/  May Mon Post       90154

May Mon Post, Esquire
Attorney for Plaintiff
1735 Market Street, Suite A-194
Philadelphia, PA  19103
TEL:  (267) 335-3068
FAX:  (267) 599-9398
mpost@PostLawyer.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of Plaintiff Jamarr Kellam's Motion for Summary Judgement with accompanying Memorandum of Law in support of his motion and exhibits were served on Defendant on this 20th day of April by filing it electronically on ECF. This motion is in Response to Defendant's Motion for Summary Judgment previously filed with this Court.

Brian W. Franklin, Esquire
Segal McCambridge Singer & Mahoney, Ltd.
1818 Market Street, Suite 2600
Philadelphia, PA  19103

Respectfully submitted,
THE POST LAW FIRM

*/s/ May Mon Post*
_____
May Mon Post, Esquire
Attorney for Plaintiff
1735 Market St., Suite A-194
Philadelphia, PA  19103
TEL:  (267) 335-3068
FAX:  (267) 599-9398
mpost@PostLawyer.com